## Sophie Topolski, Appellee, v. Chicago Heights Gas Company, Appellant.

### Gen. No. 14,553.

1. NEGLIGENCE—*manner of repairing gas pipes.* If a personal injury is suffered by escaping gas, negligence is established if it is shown that the defendant in repairing the gas pipe in the premises in question disconnected the service pipe without shutting off the gas below the point at which such pipe was so disconnected.

2. VERDICTS—*when set aside as against the evidence.* A verdict will be set aside as against the evidence if it is clearly and manifestly so.

Action in case for personal injuries. Appeal from the City Court of Chicago Heights; the Hon. HOMER ABBOTT, Judge, presiding. Heard in this court at the March term, 1908. Reversed and remanded. Opinion filed June 28, 1909.

LACKNER, BUTZ & MILLER, for appellant.

GEORGE A. BRINKMAN, for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

In an action on the case for personal injuries brought by appellee against appellant, plaintiff had judgment for $1,500, and the defendant appealed.

Plaintiff's husband conducted a saloon and boarding house in Chicago Heights. The defendant put gas pipes and fixtures in said building and supplied gas to it. The cause of action alleged in the declaration was that through the negligence of the defendant gas was permitted to escape into said building, and that the plaintiff, by inhaling such gas, was injured.

On the ground floor of the building was a room about thirty-eight feet long and twenty-three feet wide. In one corner of this room was a room eight or ten feet square, but the partitions which separated it from the remainder of the room only extended to within two or three feet of the ceiling. In the larger room was

the bar, and in it the family and boarders ate their meals. The smaller room was used as a kitchen, and in it were the gas supply pipe, gas meter and regulator.

An odor of gas was noticed in the building on the evening of December 21, 1905, and defendant was notified and requested to make repairs. The next morning between seven thirty and eight o'clock, Myers, a gas fitter, and Flary, a helper, in the service of the defendant, came to the building to make repairs.

The testimony of the plaintiff tended to show that after Myers and Flary had been at work in the small room about an hour, she, then standing by the bar in the large room, was overcome by gas and fell to the floor. She testified in chief that Myers and Flary "unscrewed a pipe in three small pieces, * * * and they were working there when I started to holler, and says, 'Jesus, Mary and Joseph, there is gas around,' and they said, 'The gas won't kill nobody,' and in the meantime I fell." * * *

"Q. Where were you standing at the time when you fell?

A. On the corner back of the bar.

Q. What did they do then, if you know?

A. I did not know nothing. I do not remember anything.

Q. Do you know how long you laid there?

A. I do not remember how long I was there.

Q. When do you remember anything after that— after that time that you fell down; when do you remember anything after that?

A. I remember that I went outside and I had to throw up, and got the hiccoughs and started to holler, and could not holler nobody.

Q. Do you know how you got out?

A. I remember I got out on the four and I was hollering. I could not holler hardly."

She further testified that she sat down on the sidewalk, and a boy and girl employed by her took her

into her house and up stairs. On cross-examination she testified that she fell down right away after the men said that the gas would not hurt her, and "did not know nothing;" that the men ran out after she fell down; that the taking off of the pipe, the running away of the men and her fall all happened pretty near the same time; that when she was feeling so bad, the men left everything and ran away.

Myers testified that he and Flary went to the saloon at eight o'clock in the morning of December 22nd; that he noticed an odor of gas, but not a strong odor, in the saloon; that he found a leak in a pipe leading to an unlighted burner in a chandelier in the saloon, only partially turned off; that he turned the cock and shut off the gas; that he went into the little room and shut off the gas by turning the service cock, which was below the regulator; that he then took off the regulator and, when it was off, discovered a slight leak in the service cock, and screwed a plug into the top of the service cock; that he then disconnected the regulator and took it with him to the shop; that he and Flary were at the saloon three-quarters of an hour; that plaintiff did not utter any exclamation or fall down while they were at the saloon, but was standing up when they went away. The testimony of Flary as to what occurred at the saloon in the morning was substantially the same as that of Myers. He testified that plaintiff did not utter any exclamation; did not fall down, but was standing up when he and Myers left.

Myers and Flary left the saloon before nine o'clock, and did not return until after one o'clock in the afternoon. Plaintiff, according to her testimony, was overcome by gas before they left in the morning, and it is therefore only necessary, in determining whether the verdict is contrary to the evidence, to consider the testimony tending to show what occurred in the morning.

The only act of negligence which the testimony of the plaintiff tends to prove is the disconnecting of

the service pipe without shutting off the gas below the point at which the pipe was so disconnected. That the service pipe was disconnected is undisputed. If this was done without shutting off the gas, such act was a negligent act. If, before disconnecting the service pipe, the gas was shut off by turning the service cock, the act of disconnecting the service pipe was not negligent.

The plaintiff did not testify that she observed the service cock, or that she knew that the gas was not turned off below the place where the pipe was disconnected, before the pipe was disconnected. Myers and Flary both testified that the service cock was turned and the gas shut off before the pipe was disconnected.

The testimony of Myers and Flary that they shut off the gas at the service cock before disconnecting the pipe above the service cock, is probable. A natural regard for their own safety would prompt them to so shut off the gas before disconnecting the pipe. Again, it is difficult to see how plaintiff, out in the large room, could be overcome by gas escaping from an open pipe in the small room, when neither Myers nor Flary, who were at work in the small room, was overcome or even affected.

The testimony of plaintiff that she was overcome and fell to the floor in the presence of Myers and Flary, and that they left their work and ran away, leaving her lying on the floor unconscious, is improbable and is contradicted by both Myers and Flary.

A careful review of all the evidence has led us to the conclusion that the verdict was so manifestly against the evidence that the trial court erred in denying defendant's motion for a new trial, and the judgment will therefore be reversed and the cause remanded.

*Reversed and remanded.*